

ENTERED
11/14/2018

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| JOSE SR. TREVINO, *et al* § | CASE NO: 10-70594 | |
|     Debtors § | | |
| § | CHAPTER 13 | |
| § | | |
| JOSE TREVINO, *et al* § | | |
|     Plaintiffs § | | |
| § | | |
| VS. § | ADVERSARY NO. 16-7024 | |
| § | | |
| SELECT PORFOLIO SERVICING, INC., § *et al* | | |
|     Defendants § | Judge Eduardo V. Rodriguez | |

**MEMORANDUM OPINION
GRANTING DEFENDANTS' MOTION
TO STAY AND TO COMPEL ARBITRATION**
*Resolving ECF No. 103*

### I.   INTRODUCTION

In the United States, there is the long-held belief that "[l]itigation is the pursuit of practical ends, not a game of chess." *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941). This Court recognizes that alternative dispute resolutions, or ADR, quickly brings a practical end to most parties' disputes. Moreover, this Court highly encourages parties to pursue ADR whenever possible. And although this Court is not in favor of forcing unwilling parties to spend limited time and resources pursuing ADR, Congress, the Supreme Court, and the Fifth Circuit have made it clear when arbitration clauses must be enforced on unwilling parties.

Here, Defendants Select Portfolio Servicing, Inc. ("*SPS*") and Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, as Indenture Trustee for CSMC 2015-RPL1 Trust, Mortgage-Backed Notes, Series 2015-RPL1 ("*Wilmington*") (collectively, "*Defendants*") ask this

1 / 16

Court, by means of "Defendants' Motion to Stay And to Compel Arbitration" ("*Motion to Arbitrate*"), to stay the pending case and force Jose and Teresa Trevino ("*Trevinos*" or "*Plaintiffs*") into arbitration in accordance with a rider found in the Trevinos' note.  ECF No. 103.  Unfortunately for the Plaintiffs, this is a case where Congress, the Supreme Court, and the Fifth Circuit have made it clear that the arbitration rider in the note must be enforced.

## II.     FINDINGS OF FACT

Plaintiffs filed a Chapter 13 bankruptcy petition on August 25, 2010.  Bankr. ECF No. 1.[1]  Five years into the bankruptcy proceeding, Wilmington was transferred the rights as mortgagee of Plaintiffs' loan from U.S. Bank Trust, N.A. as Trustee for LSF8 Master Participation Trust.  Defs.' Ex. 6  Along with this transfer came the assignment of SPS as servicer of Plaintiffs' loan.  *Id.*; Defs.' Ex. 4.  Just over one year later, Plaintiffs initiated this adversary proceeding against Defendants, alleging: (1) abuse of process; (2) violations of the Real Estate Settlement Procedures Act and Truth-in-Lending Act, (3) relief pursuant to Fed. R. Bankr. P. 3002.1(i); (4) violations of the chapter 13 plan and the orders confirming the plan; (5) violations of the Fair Debt Collection Practices Act; (6) violations of the Texas Debt Collection Act; (7) breach of contract; (8) violation of the discharge junction; and (9) request for declaratory and injunctive relief.  ECF No. 1.

Defendants responded in kind by filing "Defendants' Motion to Dismiss Each Cause of Action in the Amended Petition Pursuant to Rule 12(b)(6)" ("*Motion to Dismiss*") on January 13, 2017.  ECF No. 22.  The next day, Defendants' followed this up with an amended motion to dismiss.  ECF No. 23.  A "Comprehensive Scheduling, Pre-Trial & Trial Order" ("*Scheduling*

---

[1] Citations to the docket in this adversary proceeding styled *Jose Trevino and Teresa Trevino vs. Select Portfolio Servicing, Inc., et al*, 16-07024 (the "*Adversary Proceeding*"), shall take the form "ECF No. ––––," while citations to the bankruptcy case, 16-70594 (the "*Bankruptcy Case*"), shall take the form "Bankr. ECF No. ––––."

*Order*") was entered at a hearing held on January 25, 2017, where the Court scheduled deadlines; Plaintiffs consented to the entry of final orders on all non-core matters by this Court; and Defendants were granted leave to file a second amended motion to dismiss. ECF No. 25. Shortly thereafter Defendants filed "Defendants' Second Amended Motion to Dismiss Each Cause of Action in the Amended Complaint Pursuant to Rule 12(b)(6)" ("*Second Amended Motion to Dismiss*") on February 8, 2017. ECF No. 28. In Defendants' Second Amended Motion to Dismiss, SPS and Wilmington consented "to this Court adjudicating, and hearing and determining the causes of action raised in Plaintiffs' Complaint." *Id.* at 2, ¶ 1. Less than one month later, Plaintiffs filed a "Motion for Rule 9011 Sanctions" ("*Sanctions Motion*") on March 13, 2017, ECF No. 36, with Defendant's responding to the Sanctions Motion on April 3, 2017. ECF No. 39. Four days later, Plaintiffs filed their response to the Second Amended Motion to Dismiss, ECF No. 42, further amending their response on April 14, 2017. ECF No. 45. A hearing on the Second Amended Motion to Dismiss was held on May 23, 2017, with this Court taking said matter under advisement. ECF No. 67.

On July 7, 2017, Defendants filed an "Emergency Motion to Extend Abatement of Discovery." ECF No. 69. Granting the emergency motion on the same day, this Court abated the Scheduling Order pending the Court's entry of an order regarding the Second Amended Motion to Dismiss. ECF No. 73. This Court denied Defendants' Second Amended Motion to Dismiss, ECF No. 28, and unabated the adversary on February 23, 2018. ECF No. 76.

On April 13, 2018, Defendants filed their answer to the complaint, ECF No. 88, further amending it on May 3, 2018. ECF No. 91. In filing their answer and various motions to dismiss, Defendants have not asserted any counterclaims, nor have they taken any discovery. Notably, no motion for summary judgment has been filed in this case. Less than two weeks after Defendants'

initial answer to the complaint, on April 27, 2018, Defendants filed "Defendants' Statement of Consent to Entry of Final Orders or Judgment." ECF No. 90. On May 24, 2018, Plaintiffs filed a "Motion to Strike/Deem Admitted Defendants' Amended Answer to Plaintiffs' First Amended Complaint" ("*Motion to Strike*"). ECF No. 95. Less than a month later, on June 13, 2018, Defendants filed their response to Plaintiffs' Motion to Strike. ECF No. 96. Two days later, Defendants filed a "Motion for Leave to File Second Amended Answer" ("*Motion for Leave*"). ECF No. 99.

Just under a week later, on June 21, 2018, Defendants filed their Motion to Arbitrate. ECF No. 103. For the first time in this adversary proceeding, Defendants raise the issue of arbitration. *Id.* Defendants point out that on February 21, 2005, Plaintiffs executed a note in the original principal amount of $91,500 (the "Note"). Defs.' Ex. 2, at 6. To secure repayment of the Note, the Trevinos executed a deed of trust (the "Deed of Trust"). *Id.* at 11. The Note and Deed of Trust are collectively referred to as the "Loan." The Deed of Trust specifically included an arbitration rider (the "Arbitration Rider"). *Id.* at 31-33. Both Plaintiffs executed the Arbitration Rider in addition to executing the Deed of Trust. *Id.* at 33. The Arbitration Rider provides: "All disputes, claims or controversies arising from or related to the loan evidenced by the Note, including statutory claims, shall be resolved by binding arbitration, and not by court action except as provided under "'Exclusions below.'" *Id.* at 31. It further provides that the agreement to arbitrate "shall be governed by the Federal Arbitration Act." *Id.* The Arbitration Rider also provides that Plaintiffs shall not be responsible to pay the balance of any initial fees, and all other fees and costs of the arbitration. *Id.* at 32. The Arbitration Rider includes a conspicuous notice providing that, by signing the rider, although Plaintiffs were giving up rights associated with litigating disputes in court, the agreement was completely voluntary, and if

Plaintiffs did not agree to arbitrate, they would not be denied the Loan:

> NOTICE: BY SIGNING THIS ARBITRATION RIDER YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT TO [*sic*] THE MATTERS DESCRIBED IN THE "ARBITRATION OF DISPUTES" SECTION ABOVE DECIDED EXCLUSIVELY BY ARBITRATION, AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT HAVE TO LITIGATE DISPUTES IN A COURT OR JURY TRIAL. DISCOVERY IN ARBITRATION PROCEEDINGS MAY BE LIMITED BY THE RULES OF PROCEDURE OF THE SELECTED ARBITRATION SERVICE PROVIDER.
>
> THIS IS A VOLUNTARY ARBITRATION AGREEMENT, IF YOU DECLINE TO SIGN THIS ARBITRATION AGREEMENT, LENDER WILL NOT REFUSE TO COMPLETE THE LOAN TRANSACTION BECAUSE OF YOUR DECISION.

*Id.* at 32, 33. Plaintiffs responded to Defendants' Motion to Arbitrate on July 23, 2018. ECF No. 120. Defendants further supplemented their Motion to Arbitrate by filing "Defendants' Reply in Support of Motion to Stay and to Compel Arbitration" on August 27, 2018. ECF No. 125. A hearing on the Motion to Arbitrate was held on August 31, 2018, with this Court taking the matter under advisement. ECF No. 129. Based on the arguments presented in the live pleadings, all evidence in the record, and relevant case law, this matter is ripe for consideration and this Court now issues its Memorandum Opinion.

### III.   CONCLUSIONS OF LAW

#### A. Jurisdiction, Venue, and This Court's Constitutional Authority to Enter a Final Order

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and now exercises its jurisdiction in accordance with *In re: Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012). Furthermore, these are core matters under § 157(b)(2), and this Court holds the constitutional authority under *Stern v. Marshall*, 564 U.S. 462 (2011) to issue a final order. However, to the extent these are non-core matters, parties may consent to

jurisdiction of this Court on non-core matters to enter a final order. *Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938-39 (2015). And in this adversary, Plaintiffs filed their consent on January 25, 2017, ECF No. 25, and Defendants filed their consent on April 27, 2018. ECF No. 90. Therefore, even if the matters before the Court are non-core matters, all parties have consented and this Court holds constitutional authority to enter a final order and judgment. Finally, venue is governed by 28 U.S.C. §§ 1408, 1409. Here, venue is proper because the Court presided over the underlying Bankruptcy Case. *See* Bankr. ECF No. 1.

### B. Whether the Servicer of a Loan Can Rely on the Contents of the Deed of Trust to Compel Arbitration

This Court must first determine whether SPS is a party to the contract with the arbitration clause between the Trevinos and Wilmington, or is otherwise entitled to enforce the clause. Discussed *infra*, this Court finds that SPS, as servicer of Plaintiffs' mortgage, is entitled to rely upon the Arbitration Rider in order to compel arbitration.

Under Texas law, a mortgage servicer may administer a foreclosure on behalf of the mortgagee when there is an agreement granting the servicer authority to service the mortgage, regardless of whether the lender and/or servicer has possession of the original note. *Rust v. Bank of Am., N.A.*, 573 F. App'x 343, 346 (5th Cir. 2014); *see also Griffen v. Green Tree Servicing, LLC*, No. CV H-11-4380, 2012 WL 13042636, at *1 (S.D. Tex. Mar. 22, 2012) (holding that under the arbitration agreement, the servicer had authority to compel arbitration against the mortgagor regarding a foreclosure dispute). In *Rust*, one issue was whether a servicer who was assigned all rights under the deed of trust in a residential mortgage could begin the foreclosure process after the mortgagor failed to make her mortgage payments. 573 F. App'x at 346. Relying on the Texas Property Code, which includes language stating that a mortgage servicer may foreclose property on behalf of a mortgagee as long as there is an agreement giving the

servicer authority, the Fifth Circuit found that the servicer could foreclose as servicer, without holding or owning the note.  *Id.* (quoting TEX. PROP. CODE ANN. § 51.0025).

Here, Wilmington was transferred the rights as mortgagee of Plaintiffs' loan from U.S. Bank Trust, N.A. as Trustee for LSF8 Master Participation Trust.  Defs.' Ex. 6.  Along with this transfer came the assignment of SPS as servicer of the loan.  *Id.*; Defs.' Ex. 4.  The Arbitration Rider attached to the Deed of Trust states that the term Lender includes " . . . the company servicing the Note on Lender's behalf (the "Servicer") . . . ."  Defs.' Ex. 2, at 31.  This Court finds that Wilmington was transferred all rights as mortgagee of the loan to the Plaintiffs.  Additionally, in following Texas Property law and the Fifth Circuit's treatment of servicers in *Rust*, this Court finds that SPS is the servicer of the Loan, and as such is entitled to service the Loan on Wilmington's behalf.

Finally, the Arbitration Rider also provides that "All disputes, claims or controversies arising from or related to the loan evidenced by the Note (the "Loan"), including statutory claims, shall be resolved by binding arbitration, and not by court action, except as provided under 'Exclusions from Arbitration' below."  *Id.*  Thus, this Court finds that Wilmington as mortgagee holds the right to compel arbitration according to the arbitration rider, and SPS as servicer of the Loan holds the right to compel arbitration according to the arbitration rider.

### C. Whether Defendants Waived Their Right to Arbitration

This Court must then determine whether Defendants have waived their right to arbitration.  Specifically, the question before this Court is whether Defendants, by filing various motions within this adversary proceeding, have effectively invoked the judicial process and prejudiced Plaintiffs to such a degree as to effectively waive their right to compel Plaintiffs to arbitration.  Discussed *infra*, this Court finds that Defendants have not waived their right to

arbitration, and thus are within their rights to compel Plaintiffs to arbitrate the dispute.

The Federal Arbitration Act ("*FAA*") provides that a written provision in a contract that evidences a desire to settle by arbitration any controversy specified within the contract is valid irrevocable, and enforceable, unless there exists adequate grounds for revocation of the contract. 9 U.S.C. § 2. The FAA allows a party who has entered into an arbitration agreement the opportunity to request an order compelling the parties to proceed with arbitration. § 4. If a court finds that the issue is indeed referable to arbitration, on application by one of the parties to compel arbitration, the court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." § 3.

The FAA represents a "congressional declaration of a liberal policy favoring arbitration . . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 103 S. Ct. 927, 941 (1983). Congress not only required courts to respect and enforce arbitration agreements, but congress specifically directed courts to respect and enforce the parties' chosen arbitration procedures. *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018); s*ee also* 9 U.S.C. §§ 3, 4. The general observation of the FAA is that it requires courts to rigorously enforce arbitration agreements according to their terms, including terms that specify matters subject to arbitration, and the rules under which arbitration will be conducted. 138 S. Ct. at 1621.

While a direct attack on the fundamental attributes of arbitration will go unnoticed, arbitration as a right may be waived. *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009). A waiver is found when the party seeking arbitration meets two requirements: (1) the party claiming arbitration substantially invokes the judicial process, and (2) to the detriment or prejudice of the other party. *Id.* The party claiming that the right to arbitrate has been waived bears a heavy burden; there is a strong presumption against finding a waiver of arbitration, and

any doubts must be resolved in favor of arbitration. *Gulf Guar. Life Ins. Co. v. Connecticut General Life Ins. Co.*, 304 F.3d 476, 484 (5th Cir. 2002).

### i   Invocation of Judicial Process

Defendants' have not invoked the judicial process as to necessitate a finding of waiver of their right to arbitrate. For the purposes of finding waiver, a party generally invokes the judicial process by initially pursuing litigation of claims, then reversing course and attempting to arbitrate those claims. *Nicholas*, 565 F.3d at 907. In other words, a party waives arbitration when it seeks a decision on the merits before attempting to arbitrate. *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009). Waiver can also "result from some overt act in Court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Gulf Guar. Life Ins. Co.*, 304 F.3d at 484. Moreover, the Fifth Circuit has found that a party substantially invokes the judicial process when it files a motion to dismiss with prejudice based on affirmative defenses, then waits to file the motion to compel arbitration when it's convenient to do so. *In re Mirant Corp.*, 613 F.3d 584, 589-590 (5th Cir. 2010); *see also DHI Group., Inc. v. Kent*, No. CV H-16-1670, 2018 WL 1801581, at *3–4 (S.D. Tex. Jan. 9, 2018) (a party substantially invokes the judicial process when almost a year passes between filing their motion to dismiss and motion to compel arbitration, with full knowledge that they had the right to compel arbitration since almost the beginning of the case), *report and recommendation adopted*, No. CV H-16-1670, 2018 WL 1150213 (S.D. Tex. Mar. 5, 2018).

The Fifth Circuit in *Mirant* stated that the defendant was seeking "a decision on the merits before attempting to arbitrate" and that this was "easily distinguished from the scenario where a party demonstrates its preference to arbitrate by submitting a dispositive motion only as an alternative to a motion to compel arbitration." *Mirant*, 613 F.3d at 589-590. The Fifth Circuit

was not convinced that defendant, "having learned that the district court was not receptive to its arguments, should be allowed a second bite at the apple through arbitration," because the Fifth Circuit did not want to "encourage litigants to delay moving to compel arbitration until they could ascertain 'how the case was going in federal district court.'" *Id*. at 590.

Here, Defendants filed a motion to dismiss, amending it twice. *See* ECF Nos. 22, 23, 28. None of the motions to dismiss assert affirmative defenses. *Id.* Several months after this Court issued its denial of Defendants' motion to dismiss, ECF No. 76, Defendants filed their Motion to Arbitrate. ECF No. 103. While this adversary has been on the docket for over two years, Defendants filed their Motion to Arbitrate only four months after the proceeding was unabated. *Compare* ECF No. 73 *with* ECF No. 103. This Court is not convinced by Plaintiffs' arguments that Defendants' are seeking a second bite at the apple. The absence of affirmative defenses asserted and lack of undue delay on Defendants' part sufficiently demonstrates to this Court that Defendants have not substantially invoked the judicial process. Therefore, there is no waiver of arbitration by Defendants. Notwithstanding the fact that Defendants did not substantially invoke the judicial process, and therefore did not waive their arbitration right, this Court will nevertheless direct its attention to the second factor in determining whether a party has waived their right to arbitration: prejudice.

### ii  Prejudice

Plaintiffs have failed to overcome their burden of proving prejudice. Prejudice must be demonstrated before a waiver of the right to arbitrate will be found. *Mirant*, 613 F.3d at 591. Three relevant factors to consider when making a prejudice determination are delay, expense, and damage to a party's legal position. *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004).

Delay on its own generally does not result in waiver of arbitration. *See Lemus v. CMH Homes, Inc.*, 798 F.Supp.2d 853, 859-860 (S.D. Tex. July 12. 2011) (no waiver of arbitration found even though party waited over a year to file a motion to compel arbitration); *Tenneco Resins, Inc. v. Davy International, AG*, 770 F.2d 416, 420-21 (5th Cir. 1985) (eight month delay); *Envirex, Inc. v. K.H. Schussler*, 832 F.Supp. 1293, 1295-96 (E.D. Wis. 1993) (two years). However, delay combined with other prejudicial factors can favor a finding of waiver. *See Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1159 (5th Cir. 1986) (affirming the district court's finding that the "'mounting attorney's fees,' 'seventeen month delay' [before asserting the right to arbitrate], and 'disclosure which has resulted from the numerous depositions and production of documents' constituted prejudice sufficient'" to support the waiver of arbitration); *Nicholas v. KBR, Inc.*, 565 F.3d 904, 910 (5th Cir. 2009) (holding that removal of case to federal court, successful opposition to motion to remand, answering complaints, propounded discovery requests, and deposing witness gave rise to prejudice). *But see Williams v. Cigna Financial Advisors, Inc.*, 56 F.3d 656 (5th Cir. 1995) (holding that defendant did not waive right to seek arbitration even though defendant removed state court action to federal court, filed motion to dismiss and a motion to stay proceedings, answered the complaint, asserted a counterclaim, and exchanged discovery).

Defendants' conduct does not rise to the level as to support a finding of prejudicial delay. Although this adversary proceeding was originally filed in September 2016, it has been approximately four months between this proceeding unabating and Defendants filing their Motion to Arbitrate. *Compare* ECF No. 79 (order unabating case on February 16, 2018) *with* ECF No. 103 (Motion to Arbitration on June 21, 2018). Furthermore, the Motion to Arbitrate was only filed two months after Defendants filed their original answer to the complaint.

*Compare* ECF No. 88 (Defendants' original answer to the complaint filed on April 13, 2018) *with* ECF No. 103. This timeline is consistent with what the courts in *Lemus* and *Williams* found to be acceptable. *See Lemus*, 798 F.Supp.2d at 860 (no waiver even though waited over a year to file for arbitration); *Williams*, 56 F.3d at 661 (no waiver even though removed to federal court, filed answer, motion to dismiss, counterclaims, motion to stay proceedings, and engaged in discovery). Considering the relatively short period between this case unabating, Defendants filing their answer, and Defendants filing the Motion to Arbitrate, this Court concludes that Plaintiffs have not been prejudiced by delay.

One of the primary goals of arbitration is to avoid the expense of litigation; therefore, a showing of significant litigation expenses during the life of a case can give rise to a finding of prejudice. *Nicholas*, 565 F.3d at 910-911. For example, spending over $260,000 in legal fees, solely attributable to defending against the opposing party's discovery motions, motions to dismiss, and an eighteen-month delay supported a finding of prejudicial expense. *In re Mirant Corp.*, 613 F.3d at 591. Similarly, a brokerage firm's time and expense spent defending a motion for summary judgment, along with a seventeen-month delay, and substantial discovery disclosures constituted prejudice. *Price*, 791 F.2d at 1159. While a showing of significant expenses can give rise to a finding of prejudice, it is important to contrast "the expense of having to defend a motion for partial summary judgment," which is a cost that would not have been incurred in preparation for arbitration and thus prejudicial, from the expense of defending a motion to dismiss made before filing an answer, which a plaintiff "should not be altogether surprised that a defendant takes the protective step of filing. *Id.* at 1159-60; *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 888 (2d Cir. 1985).

The expenses incurred by Plaintiffs do not rise to a level sufficient enough to constitute a finding of prejudice. Plaintiffs' counsel points to a substantial amount of time incurred in litigating this case, including, *et al*, defending against motions to dismiss, motions to determine, and abating discovery. ECF No. 120. Notably, however, is the fact that Defendants have not asserted any counterclaims to date, have not taken discovery, and have not filed a motion for summary judgment, all of which would require considerable time and expense. The present case stands in sharp contrast to *Republic Ins. Co.*, which found prejudice when the parties participated in full-fledged discovery, expert preparation, and trial preparation. *Republic Ins. Co.*, 383 F.3d at 347. The time and expense counsel for Plaintiffs have spent thus far in this case, is time and expense spent dealing with elementary matters that one should come to expect after a complaint is filed: dealing with motions to dismiss and answers to the complaint. Because Plaintiffs have not been forced to respond to discovery requests, affirmative defenses, or motions for summary judgment, all of which would have required a serious expenditure in time and fees, Plaintiffs cannot show prejudice enough to warrant waiver.

Lastly, damage to a party may occur where the parties engage in extensive pretrial activity, including disclosures resulting from numerous depositions and production of documents. *Id.* In *Republic Ins. Co.*, the court found that the party opposing arbitration would be "sorely prejudiced" if arbitration was compelled, because it had participated in, *et al*, "full-fledged discovery, expert preparation, and trial preparation," which gave the opposing side perspective on the other side's strategy. *Id.* But see *Cargill Ferrous Int'l v. Sea Phoenix MV,* 325 F.3d 695, 700-01 (5th Cir. 2003) (holding that arbitration was not waived even though the parties had conducted full discovery and had a bench trial on the merits after the district court refused to compel arbitration, when the party seeking arbitration asserted that right in its initial answer and

filed a motion to compel arbitration six months later when only a minimal amount of discovery had occurred).

Plaintiffs' claim of damages do not rise to the level as to be prejudicial. Although Plaintiffs' responded to Defendants' motions to dismiss and motion to determine, as well as opposing abatement of discovery, an extensive amount of "full-fledged" discovery has yet to commence. *Republic Ins. Co.*, 383 F.3d at 347. Plaintiffs have presented no evidence showing that there has been extensive discovery which would have provided Defendants an insight at their legal strategy. Nor has there been expert and/or trial preparation in this case. Plaintiffs' offer no authority supporting its proposition that Defendants' participation in the current adversary, even if it results in damage, protraction, and substantial expense on Plaintiffs' part, rises to the level of the type of "overt act that would indicate [Defendants'] desire to resolve the underlying [adversary proceeding] via litigation rather than arbitration for the purposes of waiver." *Gulf Guar. Life Ins. Co.*, 304 F.3d at 485.

It is important for this Court to reiterate that Plaintiffs bear a heavy burden to establish that Defendants waived their right to arbitration, and there is a strong presumption against finding a waiver of arbitration. *Republic Ins. Co.*, 383 F.3d, at 344. Any doubts concerning waiver of arbitration should be resolved in favor of arbitration. *Price*, 791 F.2d at 1158. Plaintiffs have not met their burden as to delay. Plaintiffs claim they were prejudiced by delay because this case has been pending since September 2016. Such delay is prejudicial against Plaintiffs, they argue, because Defendants should've filed their Motion to Arbitrate as soon as practicable, instead of waiting for the opportune time. However, a cursory glance shows that while this case was filed back in 2016, it was abated for more than half a year, and the Motion to Arbitrate was only filed two months after Defendants filed their original answer to the complaint.

The delay had in this case is minimal at best, and falls within case law and Fifth Circuit precedent holding the same. As such, Plaintiffs have failed to overcome their burden of showing delay as prejudicial.

Plaintiffs have not met their burden as to expense. Plaintiffs claim the time and expense incurred in defending against Defendants' various motions rises to the level as to support a finding of prejudice. Plaintiffs in their support point to case law holding that heavy legal expenses, when combined with other prejudicial factors, can form a basis for a finding of prejudice. Although expense is but one factor when considering prejudice, Plaintiffs fail to make the important distinction between fees incurred in responding to elementary motions such as motions to dismiss, which do not normally lead to a finding of prejudice, from fees incurred in defending against motions for summary judgment, which are shown to be prejudicial. As such, Plaintiffs have failed to overcome their burden of showing expense as prejudicial.

Lastly, Plaintiffs have not met their burden as to damage. Plaintiffs claim that responding to Defendants' various motions gave Defendants a preview of their legal strategy, resulting in damage to their position. While damage may occur when a party engages in extensive pretrial activity, such as full-fledged discovery, expert preparation, and trial preparation, Plaintiffs' involvement in responding to Defendants' motions to dismiss, motions to determine, and abatement of discovery is not sufficient as to support a finding of damage. Moreover, Plaintiffs fail to point to any evidence that would evince a finding of damage. Because Plaintiffs have failed to meet their heavy burden when it comes to proving damage, or in combination with any of the other prejudicial factors, this Court finds that Defendants have not waived their right to arbitration. Therefore, arbitration is proper.

## IV.  CONCLUSION

Pending before the Court is a single matter self-styled "Defendants' Motion To Stay and to Compel Arbitration." ECF No. 103.  It is therefore:

**ORDERED:** that

1. Defendants' "Motion To Stay and to Compel Arbitration," ECF No. 103, is herein GRANTED;

2. Adversary Proceeding 16-7024 is hereby ABATED pending further orders of this Court.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 11/14/2018.

_____
Eduardo V. Rodriguez
United States Bankruptcy Judge