

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

ENTERED
03/07/2019

| | | |
|---|---|---|
| IN RE: | § | |
| **JOSE SR. TREVINO**, *et al* | § | **CASE NO: 10-70594** |
| **Debtors** | § | |
| | § | **CHAPTER  13** |
| | § | |
| _____ | § | |
| **JOSE  TREVINO**, *et al* | § | |
| **Plaintiffs** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 16-7024** |
| | § | |
| **SELECT PORFOLIO SERVICING, INC.,** | § | |
| *et al* | § | |
| **Defendants** | | |

**MEMORANDUM OPINION**
**DENYING PLAINTIFFS' MOTION TO RECONSIDER**
**THE COURT'S ORDER AND OPINION OF NOVEMBER 14, 2018**
**STAYING THESE PROCEEDINGS AND COMPELLING THE PARTIES TO**
**ARBITRATION PURSUANT TO Fed. R. Bankr. P. 7054 AND Fed. R. Civ. P. 54(b)**
*Resolving ECF No. 152*

## I.          INTRODUCTION

"When will mankind be convinced that and agree to settle their difficulties by arbitration?"[1]   In this motion to reconsider, this Court decides whether compelling arbitration stands in inherent conflict with a case containing, inter alia, several claims entirely derived from the provisions of the Bankruptcy Code.   The Fifth Circuit has stated that orders compelling arbitration are fact-driven and case-specific.   Here, not only does this case reflect a two-party dispute over charges that represent a small percentage of the total assets of the administered estate, but the underlying bankruptcy case is already closed to begin with.   That being said, it gives this Court great pause in considering sending matters derived exclusively from the

---

[1] Benjamin Franklin, *Letter from Benjamin Franklin to Joseph Banks* (July 27, 1783), reprinted in *1 The Private Correspondence of Benjamin Franklin* 132 (3d ed., 1818).

Bankruptcy Code to arbitration. Nevertheless, in this particular case, the Court finds that compelling arbitration is appropriate.

## II.     FINDINGS OF FACT

Jose Trevino and Teresa Trevino ("*Plaintiffs or Debtors*") filed their joint chapter 13 petition on August 25, 2010.[2]  The case was completed on September 8, 2015; Debtors received their discharge on July 21, 2016; and this Court entered a final decree on April 25, 2018.[3]  After receiving their discharge, Plaintiffs filed the Adversary Proceeding against Select Portfolio Servicing, Inc. ("*SPS*") and Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, as Indenture Trustee for CSMC 2015-RPL1 Trust, Mortgage-Backed Notes, Series 2015-RPL1 ("*Wilmington*") (collectively "*Defendants*") on September 26, 2016.[4]  Less than two months later, on November 18, 2016, Plaintiffs amended their complaint, alleging: (1) abuse of process; (2) violations of the Real Estate Settlement Procedures Act and Truth-in-Lending Act; (3) relief pursuant to FED. R. BANKR. P. 3002.1(i); (4) violations of the chapter 13 plan and the orders confirming the plan; (5) violations of the Fair Debt Collection Practices Act; (6) violations of the Texas Debt Collection Act; (7) breach of contract; (8) violation of the discharge injunction; and (9) willful violation of the automatic stay.[5]  Defendants responded on January 13, 2017, by filing "Defendants' Motion to Dismiss Each Cause of Action in the Amended Petition Pursuant to Rule 12(b)(6)" ("*Motion to Dismiss*"),[6] which was supplemented by an amended motion to dismiss the

---

[2] Citations to the docket in this adversary proceeding styled Jose Trevino and Teresa Trevino vs. Select Portfolio Servicing, Inc. and Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, as Indenture Trustee for CSMC 2015-RPL1 Trust, Mortgage-Backed Notes, Series 2015-RPL1, 16-7024 (the "*Adversary Proceeding*"), shall take the form "ECF No. ——," while citations to Trevinos' Bankruptcy, 10-70594 (the "*Bankruptcy Case*"), shall take the form "Bankr. ECF No. ——." Bankr. ECF No. 1.
[3] *See* Bankr. ECF Nos. 139, 182, 183.
[4] ECF No. 1.
[5] ECF No. 12.
[6] ECF No. 22.

next day, containing minor edits and corrections[7]

In the "Comprehensive Scheduling, Pre-Trial & Trial Order" entered on January 25, 2017, Plaintiffs consented to the entry of final orders on all non-core matters by this Court.[8]   On February 8, 2017, Defendants submitted their "Second Amended Motion to Dismiss Each Cause of Action in the Amended Complaint Pursuant to Rule 12(b)(6)" ("*Second Amended Motion to Dismiss*"), and consented "to this Court adjudicating, and hearing and determining the causes of action raised in Plaintiffs' Complaint."[9]   Plaintiffs filed their response and amended response to the Second Amended Motion to Dismiss on April 7 and April 14, 2017.[10]   On July 7, 2017, the Court abated the scheduling order pending ruling on the Second Amended Motion to Dismiss.[11] On February 23, 2018, this Court denied Defendants' Second Amended Motion to Dismiss and unabated the scheduling order.[12]

Defendants filed their answer and amended answer to the complaint on April 13, 2018, and May 3, 2018.[13]   On May 15, 2018, and again on June 19, 2018, a notice of appearance was entered with new counsel appearing on Defendants' behalf.[14]   Shortly thereafter, on June 21, 2018, Defendants introduced the issue of arbitration by filing "Defendants' Motion to Stay and to Compel Arbitration" ("*Motion to Arbitrate*").[15]   Within their Motion to Arbitrate, Defendants point to a note and deed of trust executed by Plaintiffs.[16]   The deed of trust included an arbitration rider ("*Arbitration Rider*") executed by Plaintiffs which expressly defined the security

---

[7] ECF No. 23.
[8] ECF No. 25.
[9] ECF No. 28 at 2, ¶ 1.
[10] ECF Nos. 42, 45.
[11] ECF No. 73.
[12] ECF No. 76.
[13] ECF Nos. 88, 91.
[14] ECF Nos. 94, 100, 101.
[15] ECF No. 103.
[16] ECF No. 12–1.

instrument to include "all Riders to this document."[17]  The Arbitration Rider provides that: "all disputes, claims or controversies arising from or related to the loan evidenced by the Note (the "Loan"), including statutory claims, shall be resolved by binding arbitration, and not by court action, except as provided under 'Exclusions from Arbitration' below."[18]  The Arbitration Rider further provides that the agreement to arbitrate "shall be governed by the Federal Arbitration Act."[19]

Plaintiffs filed their "Response in Opposition to Defendants' Motion to Compel Arbitration" ("*Response to Motion to Compel*") on July 24, 2018.[20]  A hearing on the Motion to Arbitrate was held on August 31, 2018, with this Court taking the matter under advisement.[21]  On November 14, 2018, this Court issued its "Order Granting Defendants' Motion to Stay and to Compel Arbitration" ("*Order Compelling Arbitration*").[22]  Fifteen days later, Plaintiffs filed their "Emergency Motion to Extend Deadline to File Notice of Appeal Regarding Order Compelling Arbitration (Docket No. 139)" ("*Emergency Motion*").[23]  Defendants responded to Plaintiffs' Emergency Motion on December 13, 2018.[24]  On December 14, 2018, this Court denied Plaintiffs' Emergency Motion ("*Order Denying Emergency Motion*").[25]

The same day the Court issued its Order Denying Emergency Motion, Plaintiffs filed their "Motion to Reconsider the Court's Order and Opinion of November 14, 2018 Staying These Proceedings and Compelling the Parties to Arbitration Pursuant to FED. R. BANKR. P. 7054 and

---

[17] ECF No. 12–1, at 1.
[18] ECF No. 103 at Ex. A.  None of the claims asserted by Plaintiffs against Defendants are included among the "Exclusions from Arbitration."
[19] ECF No. 103 at Ex. A.
[20] ECF No. 120.
[21] ECF No. 129.
[22] ECF Nos. 138, 139.
[23] ECF No. 143.
[24] ECF No. 150.
[25] ECF No. 151.

FED. R. CIV. P. 54(b)" ("*Motion to Reconsider*").[26]   Defendants filed their "Response to Plaintiffs'
Motion to Reconsider the Court's Order and Opinion of November 14, 2018 Staying These
Proceedings and Compelling the Parties to Arbitration Pursuant to FED. R. BANKR. P. 7054 and
Fed. R. Civ. P. 54(b)" ("*Response*"),[27] on January 4, 2019, along with a supplemental
memorandum on January 16, 2019.[28]   Plaintiffs filed their reply to Defendants' Response and
supplemental memorandum on January 28, 2019.[29]   Based on the briefs presented, all evidence
in the record, and relevant case law, this matter is ripe for consideration, and the Court now
issues its Memorandum Opinion.

## III.   CONCLUSIONS OF LAW

### A. Jurisdiction, Venue, and This Court's Constitutional Authority to Enter a Final Order

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and now exercises its
jurisdiction in accordance with Southern District of Texas General Order 2012-6.[30]   Plaintiffs'
claims are core matters under § 157(b)(2), and this Court holds the constitutional authority under
*Stern v. Marshall* to issue a final order.[31]   To the extent that non-core matters exist, parties may
consent to this Court's entry of final judgments regarding non-core matters.[32]   Here, Plaintiffs
filed their notice of consent on January 25, 2017,[33] and Defendants filed their notice of consent
on April 27, 2018.[34]   Therefore, even if non-core matters exist, all parties have consented, and

---

[26] ECF No. 152.
[27] ECF No. 155.
[28] ECF No. 156.
[29] ECF No. 157.
[30] *In re*: Order of Reference to Bankruptcy Judges, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[31] *Stern v. Marshall*, 564 U.S. 462 (2011).
[32] *Stern*, 562 U.S. at 480; *see also Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).
[33] ECF No. 25.
[34] ECF No. 90.

this Court holds the constitutional authority to enter a final order and judgment.[35]   Venue is governed by 28 U.S.C. §§ 1408, 1409.   Here, venue is proper because the Court presided over the underlying Bankruptcy Case.[36]

## B.  Whether Plaintiffs' Motion to Reconsider is to be Considered Under FED. R. CIV. P. 54(b)

There is no specific provision for a motion to reconsider under the Federal Rules of Civil Procedure.[37]   In the Fifth Circuit, a motion to reconsider may be brought under Rule 54(b) or Rule 59(e).[38]   Whereas Rule 59(e) applies only to final judgments and does not permit consideration of arguments that could have been raised previously, Rule 54(b) applies to interlocutory judgments and permits a district court to reconsider and reverse its decision for any reason.[39]   "Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires."[40]   In *Austin*, the Fifth Circuit held that when a district court applies the more stringent Rule 59(e) standard in denying a motion to reconsider an interlocutory order, it must be vacated and remanded for the district court to reconsider the motion for reconsideration under the more flexible Rule 54(b).[41]

An order compelling arbitration is interlocutory.[42]   This Court was asked to reconsider

---

[35] *Wellness*, 135 S. Ct. at 1938-40.

[36] Bankr. ECF No. 1.

[37] *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997) ("[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration."); *United States v. Fisch*, No. H-11-722, 2018 WL 1541780, at *3 (S.D. Tex. Mar. 28, 2018).

[38] *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336–38 (5th Cir. 2017).

[39] *McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018); *MetroPCS v. Fiesta Cell Phone & Dish Network, Inc.*, No. H-16-3573, 2017 WL 6888531, at *1 (S.D. Tex. Oct. 3, 2017) (when analyzing a motion to reconsider under Rule 54(b), "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.").

[40] *Austin*, 864 F.3d at 337 (internal quotations omitted).

[41] *Id.*

[42] 9 U.S.C. § 16(b); *see also Turboff v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 867 F.2d 1518, 1520–21 (5th Cir. 1989) (holding that appeal of district court order compelling arbitration was interlocutory in nature, and circuit

the Order Compelling Arbitration, not asked to reconsider a final judgment.[43]   As such, this Court will only address the Motion to Reconsider under Rule 54(b), and not Rule 59(e), because if Plaintiffs' cannot meet the requirements of Rule 54(b), they will certainly not meet the more stringent requirements of Rule 59(e).   Here, the Court finds no reason to reconsider its Order Compelling Arbitration.   The Court, in its decision, went step-by-step in appraising the facts and the law.   Within their Motion to Reconsider, Plaintiffs' cast heavy reliance on the recently issued opinion by the Fifth Circuit, *In re Forby*,[44] claiming that *Forby* establishes that the filing and prosecuting of a motion to dismiss is enough to constitute a waiver of a party's right to compel arbitration.[45]   Plaintiffs further argue that Defendants waived their right to arbitrate in writing, and that because Plaintiffs' claims are primarily core claims, the Court should deny sending them to arbitration.[46] However, none of Plaintiffs' new arguments convinces this Court to reconsider its analysis.

### C.  Whether the Fifth Circuit's Holding in *Forby* Overrules Prior Circuit Precedent

Assuming arguendo that *Forby* is directly relevant to the issue of whether arbitration should be compelled, *Forby* still does not change this Court's conclusion.   The Fifth Circuit has established that when there are conflicting precedents, the older rule is presumptively correct unless there is an intervening U.S. Supreme Court or en banc Fifth Circuit opinion.[47]   Neither is the case here.   Therefore, *Forby* must be interpreted consistently with prior panel decisions. Plaintiffs' Motion for Reconsideration suggests that *Forby* establishes a new *per se* rule that a "defendant invokes the judicial process and thus waives its right to arbitration by litigating and

---

lacked jurisdiction over such an interlocutory order).
[43] ECF Nos. 138, 152.
[44] *Forby v. One Technologies, L.P.*, 909 F.3d 780 (5th Cir. 2018).
[45] ECF No. 152.
[46] *Id.*
[47] *Caillouet v. First Bank & Trust* (*In re Entringer Bakeries, Inc.*), 548 F.3d 344, 348–49 (5th Cir. 2008)).

losing a Rule 12(b)(6) motion to dismiss prior to seeking to compel arbitration."[48]   In essence, Plaintiffs argue that *Forby* circumvents older Fifth Circuit precedent that "a bright-line rule is inappropriate for deciding whether a party has waived its right to arbitration."[49]   However, *Forby* was not decided en banc and there is no intervening U.S. Supreme Court case.  Therefore, Forby does not overrule prior Fifth Circuit precedent, and Plaintiffs' argument that a party waives their right to arbitration by litigating and losing a Rule 12(b)(6) motion to dismiss prior to seeking to compel arbitration is incorrect.[50]

### D.  Whether *Forby* changes this Court's Analysis in its Order Compelling Arbitration

*Forby* does not change this Court's analysis on whether Defendants' waived their right to arbitration.  Although waiver of arbitration is a disfavored finding, the right to arbitrate—like all contractual rights—is subject to waiver.[51]   A party may waive their right to arbitrate if they (1) substantially invoke the judicial process; and (2) cause detriment or prejudice to the other party.[52]   The party claiming waiver bears a heavy burden.[53]   There is a strong presumption against finding a waiver of arbitration, and any doubts must be resolved in favor of arbitration.[54]

#### i.   Whether Defendants Substantially Invoked the Judicial Process

To invoke the judicial process, a party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.[55]   Said another way, a party waives arbitration when it seeks a decision on the merits

---

[48] ECF No. 152 at 4.
[49] *MC Asset Recovery LLC v. Castex Energy, Inc.* (*In re Mirant Corp.*), 613 F.3d 584, 589 (5th Cir. 2010).
[50] *See id.*
[51] *Forby*, 909 F.3d at 783 (quoting *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009)).
[52] *Id.* (quoting *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 421 (5th Cir. 2014)).
[53] *Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 484 (5th Cir. 2002).
[54] *Id.*
[55] *Forby*, 909 F.3d at 784 (quoting *In re Mirant Corp.*, 613 F.3d at 589).

before attempting to arbitrate.[56]   In the Fifth Circuit, a finding that a motion to dismiss substantially invokes the judicial process is based on a factual determination on a case by case basis.[57]

*Forby* involved alleged violations of consumer fraud and unjust enrichment that was originally filed in Illinois state court before being removed to the Southern District of Illinois.[58] Defendant, in seeking a transfer to the Northern District of Texas for forum non conveniens, argued that plaintiff's claims were subject to arbitration in Texas.[59]   After successfully transferring the case, defendant neither mentioned arbitration upon filing its 12(b)(6) motion to dismiss with prejudice, nor mentioned arbitration after replying to Forby's response to their 12(b)(6) motion to dismiss.[60]   The district court partially denied the 12(b)(6) motion to dismiss with respect to the consumer fraud claim, and partially granted the motion as to the unjust enrichment claim.[61]   Almost two years after defendant initially claimed that Forby's claims were subject to arbitration, and four days after attending a Rule 26(f) conference, defendant filed its motion to stay and compel arbitration, which was granted by the district court.[62]

In reversing the district court, the Fifth Circuit noted that defendant was "fully aware of its right to compel arbitration when it filed its 12(b)(6) motion to dismiss."[63]   Defendant could have easily moved to compel arbitration, even in the alternative to its motion to dismiss, but instead pursued and obtained a partial dismissal with prejudice.   Taken together, the facts demonstrated that "[defendant's] action of moving to dismiss Forby's claims with no mention of

---

[56] *Id.* (quoting *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009)).
[57] *See generally In re Mirant Corp.*, 613 F.3d 584.
[58] *Forby*, 909 F.3d at 782–83.
[59] *Id.* at 783.
[60] *Id.*
[61] *Id.*
[62] *Id.*
[63] *Id.* at 784.

compelling arbitration demonstrated a desire to resolve the dispute in litigation rather than arbitration."[64]

Even if the Court re-examines its Order Compelling Arbitration in light of *Forby*, *Forby* does not change this Court's analysis with respect to substantial invocation of the judicial process. Unlike in *Forby*, where defendants were fully aware of their right to compel arbitration, here, the only evidence on record demonstrates that the Motion to Arbitrate was filed shortly after new counsel appeared on Defendants' behalf.[65] The Court will not fashion similarities between one party offensively using the right to compel arbitration to transfer a case, then waiting 13 months before moving to compel arbitration, with a party moving to compel arbitration a month after filing a notice of appearance.[66] This Court finds that Defendants have not substantially invoked the judicial process, and therefore did not waive their right to arbitration. Notwithstanding this conclusion, the Court, in light of *Forby*, will reexamine the second element of whether a party waived their right to arbitration.

### ii.    Whether Plaintiffs Have Been Prejudiced

Plaintiffs broadly use *Forby* to claim prejudice without specifically stating how they were prejudiced under the alleged new standards created by *Forby*. Further, even if *Forby* created a new standard of prejudice, *Forby* contained facts wholly distinct from the facts before this Court. Assuming arguendo that *Forby* did create a new standard of prejudice, under Rule 54(b), *Forby* does not change this Court's analysis on whether Plaintiffs have been prejudiced. A party opposing arbitration must also demonstrate prejudice before a waiver of arbitration will be

---

[64] *Id.*
[65] *See generally* ECF Nos. 94, 100, 101, 103.
[66] *Compare Forby*, 909 F.3d at 785 *with* ECF Nos. 94, 100, 101, 103.

found.[67]   Prejudice relates to inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.[68]   There is a strong presumption against finding a waiver of arbitration, and the party claiming that arbitration has been waived bears a heavy burden.[69]

### a.   Delay

*Forby* fails to change this Court's analysis when it comes to delay.   "A party cannot keep its right to demand arbitration in reserve indefinitely while it pursues a decision on the merits before the district court."[70]   In *Forby*, prejudice followed when a party transferred a case for the sole purpose of compelling arbitration, then waited over 13 months before moving to compel arbitration, all while attempting to obtain a dismissal with prejudice from the district court.[71] This is distinguishable from the instant case, where the Motion to Compel was filed shortly after engagement of new counsel for Defendants.[72]   Plaintiffs offer no evidence that Defendants "ke[pt] its right to demand arbitration in reserve indefinitely while it pursue[d] a decision on the merits . . . ."[73]   *Forby* does not change this Court's analysis when it comes to delay.

### b.   Expense

*Forby* fails to change this Court's analysis when it comes to expense.   Avoiding large litigation costs, including discovery, is one of primary justifications for enforcement of

---

[67] *Forby*, 909 F.3d at 784 (quoting *Nicholas*, 565 F.3d at 910).

[68] *Id.* (quoting *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004)).

[69] *Republic Ins. Co.*, 383 F.3d at 344; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983) (holding that any doubts concerning the allegation of delay or a like defense to arbitrability should be resolved in favor of arbitration).

[70] *Forby*, 909 F.3d at 785 (quoting *In re Mirant Corp.*, 613 F.3d at 591).

[71] *Id.*

[72] ECF No. 133 at 64, ll. 7–21 (" . . . but it became clear to our firm, a week after we took on this engagement . . . that these claims . . . are of the nature that can be and should be arbitrated under the *Epic* authority.").   *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 200 L. Ed. 2d 889 (2018).

[73] *Forby*, 909 F.3d at 785 (quoting *In re Mirant Co.*, 613 F.3d at 591).

arbitration.[74]  A showing of significant litigation expenses—such as responding to counterclaims, taking discovery, engaging in expert and trial preparation, and filing motions for summary judgment—during the life of a case can give rise to a finding of prejudice.[75]  In *Forby*, this Circuit does not require a party to present "evidence in terms of dollars and cents of its litigation costs" in order to determine whether the party suffered an increase in legal expenses.[76]  Discerning whether the increase in legal expenses came from a delay in the invocation of arbitration or other matters can be determined from the litigation activities the parties engaged in prior to the motion to compel arbitration.[77]

Here, Plaintiffs argue that they were forced to spend substantial legal fees and costs fighting Defendants' motions to dismiss, including responding to their motions to determine and other inappropriate filings.[78]  The only evidence offered in support was an affidavit by Plaintiffs' lead attorney.[79]  The affidavit simply listed the amount of hours generally worked on the Adversary Proceeding and failed to specify how much time Plaintiffs dedicated in responding and replying to Defendants' motions to dismiss and motions to determine.[80]  While this Court is mindful that the Fifth Circuit does not require evidence proving an exact amount in terms of

---

[74] *Janvey v. Alguire*, 847 F.3d 231, 244 (5th Cir. 2017).

[75] *Nicholas*, 565 F.3d at 910–11 (finding that in the context of the relatively small and straightforward dispute, the expense of removing, opposing a motion to remand, answering complaints, propounding discovery requests, and deposing witnesses were significant enough to constitute prejudice); *see also In re Mirant Corp.*, 613 F.3d at 591 (spending over $260,000 in legal fees solely attributable to defending against discovery motions and motions to dismiss, along with an 18–month delay, constituted prejudice); *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1159 (5th Cir. 1986) (holding that time and expense defending a motion for summary judgment, along with a 17–month delay, and substantial discovery disclosures constituted prejudice); *Republic Ins. Co.*, 383 F.3d at 347 (compelling a party to participate in full-fledged discovery, expert preparation, and trial preparation meant that the party would have to incur significant legal fees associated with litigating its defenses and counterclaims); *cf. Rush v. Oppenheimer & Co.*, 779 F.2d 885, 888 (2d Cir. 1985) (distinguishing expense of defending a motion for partial summary judgment from a motion to dismiss made before filing an answer, which should not be surprising that a party takes the protective step of filing).

[76] *Nicholas*, 565 F.3d at 910.

[77] *Id.*; *see also Janvey*, 847 F.3d at 244.

[78] ECF No. 120 at 24; *see also* ECF No. 152 at 8.

[79] ECF No. 120–3.

[80] *Id.*

dollars and cents in litigation costs, this Court cannot discern whether the increase in legal expenses came from a delay in the invocation of arbitration, or from other matters.[81]   As such, *Forby* does not change this Court's analysis when it comes to prejudice.

### c.  Damage

*Forby* fails to change this Court's analysis when it comes to damage.  When a party will have to re-litigate in the arbitration forum an issue already decided by the district court in its favor, that party is prejudiced.[82]   A party does not get to learn that the district court is not receptive to its arguments and then be allowed "a second bite at the apple through arbitration."[83]   Damage may occur where parties engage in extensive pretrial activity, including full-fledged discovery, expert preparation, and trial preparation, as it gives the opposing side perspective on the other side's strategy.[84]

Plaintiffs use surprisingly broad strokes to argue that they would have to relitigate arguments from Defendants' motions to dismiss if the matter is sent to arbitration.[85]   In support, Plaintiffs use *Forby* to draw similarities while ignoring that *Forby* involved prejudicial facts and merits-based defensive claims that are not present in this case.[86]   Factors that would indicate time, expense, and damage to a party's legal position—asserting affirmative defenses, counterclaims, full-fledged discovery, expert and trial preparation, and motions for summary

---

[81] *Nicholas*, 565 F.3d at 910; *see also Janvey*, 847 F.3d at 244.

[82] *Forby*, 909 F.3d at 785 (quoting *Nicholas*, 565 F.3d at 911).

[83] *Id.* (quoting *Petroleum Pipe*, 575 F.3d at 482); *see also Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991) ("Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration . . . .").

[84] *Republic Ins. Co.*, 383 F.3d at 347.  *But see Cargill Ferrous Int'l v. Sea Phoenix MV*, 325 F.3d 695, 700–01 (5th Cir. 2003) (holding no waiver of arbitration even though full discovery and a bench trial was conducted when the party seeking arbitration asserted that right in its initial answer and filed a motion to compel arbitration six months later when only a minimal amount of discovery had occurred).

[85] ECF No. 152 at 7.

[86] *See Forby*, 909 F.3d at 784–86.

judgment—are not present here.[87]   Plaintiffs again have failed to carry their heavy burden of proof in showing that they suffered damage to their legal position.[88]   As such, *Forby* does not change this Court's analysis when it comes to damage.

Plaintiffs have failed to convince this Court that *Forby* should change this Court's conclusion in its Order Compelling Arbitration.   Nevertheless, this Court now turns to whether it has discretion to enforce an arbitration clause when bankruptcy core claims are involved.

### E.   Whether this Court has Discretion to Enforce an Applicable Arbitration Clause when Several Claims are Derived Entirely from the Provisions of the Bankruptcy Code

Assuming arguendo that Plaintiffs' argument regarding sending core bankruptcy claims to arbitration should be reconsidered, Plaintiffs' argument still does not change the original outcome of this Court's Order Compelling Arbitration. The Federal Arbitration Act ("*FAA*") established a liberal federal policy favoring arbitration agreements, and provides that written contracts to arbitrate "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or equity for the revocation of any contract."[89]   While the FAA rigorously mandates the enforcement of agreements to arbitrate statutory claims, the   mandate may be overridden by a contrary congressional command.[90]   A court examines certain factors to determine a contrary congressional command.   Termed the *McMahon* factors, a contrary congressional command exists when the intent is deducible from (1) the statute's text; (2) legislative history; or (3) from an inherent conflict between arbitration and the statute's underlying purpose.[91]   A party bears a

---

[87] *See Republic Ins. Co.*, 383 F.3d at 347.
[88] *Id.* at 344.
[89] 9 U.S.C. § 2; *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) (courts must enforce arbitration contracts according to their terms).
[90] *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987).
[91] *Id.* at 227.   Not only does "arbitration" not appear anywhere in the Bankruptcy Code, neither does the word "FAA."   There is nothing within the statutory text or within the legislative history that even arguably evinces congressional intent to exclude discharge injunction claims from the dictates of the Arbitration Act, except for a

*heavy burden* of showing intent that one statute displaces the other, and such intent must be *clear* and *manifest*.[92]

In *National Gypsum*, the Fifth Circuit decided whether a bankruptcy court has discretion to compel arbitration under the FAA.[93]   While other circuits focus on whether claims are core or non-core and adopt a categorical rule that core matters inherently conflict with the FAA and cannot be compelled to arbitration, the Fifth Circuit rejected that approach.[94]   Instead, where a cause of action is derived entirely from the federal rights conferred by the Bankruptcy Code, a bankruptcy court retains significant discretion to assess whether arbitration would be consistent with the purpose of the Code, including centralized resolution of bankruptcy issues, need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders.[95]

The Fifth Circuit directed the use of a two-part test for determining whether to enforce an arbitration provision.   First, the court must determine whether the proceeding is either derivative of the pre-petition legal or equitable rights possessed by a debtor or is derived entirely from the provisions of the Bankruptcy Code.[96]   If the proceeding is derived entirely from the Code, the

---

single passing reference to arbitration as part of a discussion of the automatic stay.  S. REP. NO. 989, 95th Cong., 2d Sess. 50 (1978); *see also Cont'l. Ins. Co. v. Thorpe Insulation Co.* (*In re Thorpe Insulation Co.*), 671 F.3d 1011, 1020 (9th Cir. 2012) ("Neither the text nor the legislative history of the Bankruptcy Code reflects a congressional intent to preclude arbitration in the bankruptcy setting."); *The Whiting-Turner Contracting Co. v. Elec. Machinery Enter. Inc.* (*In re Elec. Machinery Enter. Inc.*), 479 F.3d 791, 796 (11th Cir. 2007) ("[W]e find no evidence within the text or in the legislative history that Congress intended to create an exception to the FAA in the Bankruptcy Code."); *Mintze v. Am. Gen. Fin. Services*, 434 F.3d 222, 231 (3d Cir. 2006) ("We find no evidence of such intent [to override the FAA] in either the statutory text or the legislative history of the Bankruptcy Code.").   Besides confirming that pending arbitration proceedings are stayed upon the filing of a petition for bankruptcy—just as federal and state lawsuits are also stayed—the legislative history adds nothing more.  The last *McMahon* factor is analyzed within the broader context of the Fifth Circuit test in *In re Nat'l Gypsum Co.*, discussed *infra*.
[92] *Epic Systems Corp.*, 138 S. Ct. at 1624 (emphasis added).
[93] *Ins. Co. of N. Am. V. NGC Settlement Trust & Asbestos Claims Mgmt. Corp.* (*In re Nat'l Gypsum Co.*), 118 F.3d 1056, 1061 (5th Cir. 1997).
[94] *Id.* at 1066–67 ("[W]e refuse to find such an inherent conflict based solely on the jurisdictional nature of a bankruptcy proceeding.").
[95] *Id.* at 1069.
[96] *Id.*

court then must determine whether arbitration of the proceeding would conflict with the purposes of the Bankruptcy Code.[97]   Only proceedings that are "premised on provisions of the [Bankruptcy] Code that 'inherently conflict'" with the FAA, and proceedings where arbitration would "necessarily jeopardize the objectives of the Bankruptcy Code," present the type of severe and inherent conflict necessary to demonstrate congressional intent to overrule the FAA.[98]   In this regard, the bankruptcy court may refuse enforcement of an otherwise applicable arbitration provision.[99]

This Court first must determine whether each cause of action Plaintiffs assert is derived entirely from the provisions of the Bankruptcy Code.[100]   Plaintiffs assert (1) abuse of process; (2) violations of the Real Estate Settlement Procedures Act (RESPA) and Truth-in-Lending Act (TILA); (3) relief pursuant to FED. R. BANKR. P. 3002.1(i); (4) violations of the chapter 13 plan and the orders confirming the plan; (5) violations of the Fair Debt Collection Practices Act (FDCPA); (6) violations of the Texas Debt Collection Act (TDCA); (7) breach of contract; (8) violation of the discharge injunction; and (9) willful violation of the automatic stay.[101]   Plaintiffs' claims for violations of the RESPA and TILA; violations of the FDCPA; violations of the TDCA; and breach of contract are not derived exclusively from the provisions of the Bankruptcy Code, but rather derive from debtors' prepetition legal or equitable rights.[102]   This Court finds these claims arbitrable as they do not inherently conflict with the FAA.  However, the allegations

---

[97] *Id.*; *see also Martinez v. Beneficial Texas, Inc.* (*In re Martinez*), No. 06-34385, 2007 WL 1174186, at *4 (Bankr. S.D. Tex. Apr. 19, 2007) ("The Fifth Circuit has applied a two-prong test for determining when a bankruptcy court may decline to enforce an otherwise valid arbitration provision.  Such discretion exists only if: (1) the proceeding derives solely from the provisions of the Bankruptcy Code; and (2) arbitration of the proceeding would conflict with the purposes of the Bankruptcy Code.").
[98] *In re Nat'l Gypsum Co.*, 118 F.3d at 1067.
[99] *Id.* at 1067.
[100] *Trefny v. Bear Stearns Sec. Corp.*, 243 B.R. 300, 315 (S.D. Tex. 1999); *In re Nat'l Gypsum Co.*, 118 F.3d at 1069.
[101] ECF No. 12.
[102] *See Leggett v. America's Servicing Co.*, No. 3:05-CV-1959-L, 2007 WL 2398510 (N.D. Tex. Aug. 22, 2007) (finding RESPA, TILA, FDCPA, TDCA claims arbitrable); *Pate v. Melvin Williams Manufactured Homes, Inc.* (*In re Pate*), 198 B.R. 841, 846 (Bankr. S.D. Ga. 1996) (finding TILA claim arbitrable).

of abuse of process; relief pursuant to FED. R. BANKR. P. 3002.1(i); violation of the chapter 13 plan and orders confirming the plan; violation of the discharge injunction; and willful violation of the automatic stay relate to bankruptcy and must be analyzed under the *National Gypsum* test.

### i. Whether the Claims Derive Exclusively from the Provisions of the Bankruptcy Code

#### a. Abuse of Process

Plaintiffs argue they were damaged by Defendants' failure to timely file Rule 3001(e)(2) Notice of Transfer of Claims, which resulted in the chapter 13 trustee erroneously sending payments to the prior servicer for Plaintiffs.[103]  Such conduct, Plaintiffs argue, is sanctionable under the Court's § 105(a) powers.[104]  11 U.S.C. § 105(a) states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  The Fifth Circuit has held that § 105(a) grants bankruptcy courts the power to sanction "vexatious" conduct.[105]  A primary function of § 105(a) is to prevent an abuse of process, and a bankruptcy court has broad authority to take necessary or appropriate actions to prevent an abuse of process.[106]  Plaintiffs abuse of process claim would require this Court to determine whether Defendants' conduct rises to the level as to warrant sanctions under 11 U.S.C. § 105(a), which falls squarely within the realms of bankruptcy.  As such, Plaintiffs' abuse of process claim, referenced through § 105(a), is derived entirely from the provisions of the Bankruptcy Code.

#### b. Relief Pursuant to FED. R. BANKR. P. 3002.1(i)

The gravamen of Plaintiffs' case revolves around an alleged failure of Defendants to

---

[103] ECF No. 12 at 30–34.
[104] *Id.*
[105] *Placid Refining Co. v. Terrebonne Fuel and Lube, Inc.* (*In re Terrebonne Fuel and Lube, Inc.*), 108 F.3d 609, 612–13 (5th Cir. 1997).
[106] *Trevino v. HSBC Mortg. Services, Inc., et al* (*In re Trevino*), 535 B.R. 110, 132 (Bankr. S.D. Tex. 2015).

withdraw their Notice of Payments, Fees, Expenses and Charges under Rule 3002.1(b) and (c).[107] As a result, Plaintiffs' argue that sanctions are appropriate under both Rule 3002.1(i) and § 105(a).[108] Rule 3002.1 applies only in chapter 13 cases and only to claims secured by a debtor's principal residence that are being cured and maintained under the debtor's plan pursuant to § 1322(b)(5).[109] Rule 3002.1(b) provisions that a creditor who holds such a claim file notice of any change in the payment amount that results from an interest rate or escrow adjustment no later than 21 days before a payment in the new amount is due.[110] Rule 3002.1(c) provisions that a creditor holding a claim must file notice within 180 days itemizing all fees, expenses, or charges that were (1) incurred in connection with the claim after the bankruptcy case was filed, and (2) they are recoverable against the debtor or the debtor's principal residence.[111] Lastly, Rule 3002.1(i) provisions that if a creditor fails to provide any information required under (b) or (c), the court may preclude the creditor from presenting such information, or may award appropriate relief after notice and hearing.[112]

Rule 3002.1 must be understood within the meaning of 11 U.S.C. §1322(b)(5), which states a chapter 13 plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." In other words, pursuant to Rule 3002.1(b) and (c), notice by a creditor is required when the security interest is the debtor's principal residence and the underlying loan documents provision

---

[107] ECF No. 12 at 37; *see also In re Trevino*, 535 B.R. at 126 (finding that in a similar case with similar parties, the heart of Plaintiffs' bankruptcy claims revolved around Rule 3002.1(c) notice of fees, expenses, and charges).
[108] ECF No. 12 at 37–39.
[109] *See generally* FED. R. BANKR. P. 3002.1; COLLIER ON BANKRUPTCY ¶ 3002.01 (Richard Levin & Henry J. Sommers eds., 16th ed.).
[110] FED. R. BANKR. P. 3002.1(b).
[111] FED. R. BANKR. P. 3002.1(c).
[112] FED. R. BANKR. P. 3002.1(i).

for the continued payment on the debt beyond the statutory limits of the confirmed chapter 13 plan.[113]  Plaintiffs' 3002.1(i) claim not only requires the Court to determine whether post-petition payments, fees, expenses, and charges were inappropriately incurred, but it requires the Court to determine whether Defendants' actions are sanctionable under Rule 3002.1(i) and § 105(a), which falls squarely into the realm of bankruptcy.[114]  As such, Plaintiffs' 3002.1(i) claim, referenced through §§ 1322(b)(5) and 105(a), is derived exclusively from the provisions of the Bankruptcy Code.

### c.  Violation of the Chapter 13 Plan and Orders Confirming the Plan

Plaintiffs not only claim that Defendants violated the confirmed chapter 13 plan under 11 U.S.C. §§ 1322(b)(5) and 1327 by failing to file timely notice of payment changes in violation of Rule 3001(e)(2), but that Defendants violated the confirmed chapter 13 plan by attempting to increase Plaintiffs' payment and decrease Plaintiffs' principal payment amount in violation of Rule 3002.1(b).[115]  As a result, Plaintiffs argue that the Court is within its authority to sanction such conduct under § 105(a).[116]

11 U.S.C. § 1322(b)(5) allows a chapter 13 debtor to cure deficiencies and maintain regular monthly mortgage payments.  11 U.S.C. § 1327(a) provides that a creditor's rights are defined by the confirmed plan, and a creditor may not take actions to collect on debts inconsistent with the method of payment provided for in the plan.  Rule 3001(e)(2) deals with transferred claims and ensures that only true creditors are asserting claims against bankruptcy estates.[117]  Rule 3002.1(b) provides that a creditor holding a claim must file notice of any change

---

[113] *In re Tavares*, 547 B.R. 204, 213 (Bankr. S.D. Tex. 2016) (citation omitted).
[114] *Id.* at 818.
[115] ECF No. 12 at 39, ¶ 187–92.
[116] *Id.*
[117] FED. R. BANKR. P. 3001(e)(2).

in the payment amount that results from an interest rate or escrow adjustment no later than 21 days before a payment in the new amount is due.[118]  Lastly, under § 105(a), bankruptcy courts have broad authority to take any action that is necessary or appropriate to prevent the abuse of process.[119]  Courts have used 11 U.S.C. § 105(a) to remedy violations of confirmed plans.[120] Plaintiffs claim would require this Court to determine whether Defendants' conduct is sanctionable under 11 U.S.C. § 105(a), which falls squarely within the realms of bankruptcy.  As such, Plaintiffs' claim for violation of the chapter 13 plan claim, referenced through § 105(a), is derived exclusively from the provisions of the Bankruptcy Code.

### d.  Violation of the Discharge Injunction

Plaintiffs argue that Defendants violated § 524(i) when Defendants failed to properly apply funds received by the trustee and Plaintiffs in accordance with the provisions of Plaintiffs' confirmed chapter 13 plan, and instead applied the funds to satisfy unapproved and undisclosed fees and charges.[121]  § 524(i) references § 524(a)(2), which explains that a bankruptcy discharge

> Operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.[122]

The discharge injunction granted under § 524(a) is a substantive right that is conferred by the Bankruptcy Code, and constitutes a core proceeding.[123]  Not only is the discharge injunction a core proceeding under § 157(b)(2), but the discharge injunction falls squarely within the realms of bankruptcy.  Thus Plaintiffs' claim for violation of the discharge injunction is derived exclusively from the provisions of the Bankruptcy Code.

---

[118] FED. R. BANKR. P. 3002.1(b).
[119] *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 373, 127 S. Ct. 1105, 1111–12, 166 L. Ed. 2d 956 (2007).
[120] *Rodriguez v. Countrywide Home Loans, Inc.* (*In re Rodriguez*), 396 B.R. 436. (Bankr. S.D. Tex. 2008).
[121] ECF No. 12 at 45–46.
[122] 11 U.S.C. § 524(a)(2).
[123] *In re Nat'l Gypsum Co.*, 118 F.3d at 1063.

### e. Willful Violation of the Automatic Stay

Lastly, Plaintiffs argue that Defendants actions constituted willful violations of the automatic stay under §§ 362(a)(3) and (6).[124]   11 U.S.C. § 362(a) provides that the filing of a bankruptcy petition operates as a stay, applicable to all entities.  The stay acts as a self-executing injunction and has broad application, acting to restrain creditors from taking any action to continue collection efforts against the debtor or property of the estate.[125]  In essence, it prevents creditors from scrambling to collect a debtor's limited assets while providing breathing room for the debtor so that equitable disbursement of the debtor's assets may be made to creditors.[126]  The Court is well within its authority to determine whether Defendants' actions were in violation of the automatic stay, and if so, may exercise its equitable powers under § 105(a) to enforce § 362(a).[127]  Thus § 362 falls squarely within the realms of bankruptcy, and Plaintiffs' claim for willful violation of the automatic stay is derived exclusively from the provisions of the Bankruptcy Code.

The fact that some of Plaintiffs' claims derive exclusively from the Bankruptcy Code does not end this Court's analysis.  The Court now must determine whether arbitration of the proceeding would conflict with the purposes of the Bankruptcy Code.[128]

### ii. Whether Arbitration of the Proceeding Would Conflict with the Purposes of the Bankruptcy Code

To determine whether an inherent conflict between the Bankruptcy Code and FAA exists, this Court is guided by the factors articulated in *National Gypsum*: (1) centralized resolution of bankruptcy issues; (2) need to protect creditors and reorganizing debtors from piecemeal

---

[124] ECF No. 12 at 46–47.
[125] *Cano v. GMAC Mortg. Corp.* (*In re Cano*), 410 B.R. 506, 523 (Bankr. S.D. Tex. 2009).
[126] *Id.*
[127] *Sanchez v. Ameriquest Mortg. Co.* (*In re Sanchez*), 372 B.R. 289, 310 (Bankr. S.D. Tex. 2007).
[128] *In re Nat'l Gypsum Co.*, 118 F.3d at 1069.

litigation; (3) and the undisputed power of a bankruptcy court to enforce its own orders.[129]   A conflict exists "where arbitration is inadequate to protect the substantive rights at issue."[130] While courts have been reticent in compelling arbitration of claims that would "necessarily jeopardize" the objectives of the Bankruptcy Code,[131] this Court adheres to the Supreme Court's holding in *Epic* that a party bears a *heavy burden* of showing a *clear* and *manifest* expression of congressional intent that the Bankruptcy Code displaces the FAA.[132]

The bankruptcy system depends in part upon centralization of issues.[133]   Debtors and creditors are initially brought into a single forum—the bankruptcy court.[134]   Bankruptcy cases are administered, debtors file their schedules, officers are appointed, parties seek allowance or disallowance of claims, trustees or debtors in possession pursue avoidance actions, creditors submit their claims, and parties engage in the reorganization process.[135]   Where an estate has been fully administered and debts discharged, arbitration of an automatic stay claim would not

---

[129] *Id.*

[130] *McMahon*, 482 U.S. at 226, 107 S. Ct. 2332.

[131] *See generally In re Nat'l Gypsum Co.*, 118 F.3d 1056; *Anderson v. Anderson* (*In re Anderson*), 553 B.R. 221 (S.D.N.Y. 2016); *United States Lines, Inc. v. American Steamship Owners Mutual Protection and Indemnity Ass'n, Inc.* (*In re U.S. Lines, Inc.*), 197 F.3d 661 (2d Cir. 1999).  *But see Williams v. Navient Solutions, LLC* (*In re Williams*), 564 B.R. 770 (Bankr. S.D. Fla. 2017) (holding that arbitration of debtor's claims, including violation of discharge injunction, would not inherently conflict with the underlying purposes of the Bankruptcy Code); *Belton v. Ge Capital Consumer Lending, Inc.* (*In re Belton*), Nos. 15-CV-1934(VB), 15-CV-3311(VB), 2015 WL 6163083 (S.D.N.Y. Nov. 2, 2016) (reversing bankruptcy court's order denying motion to compel arbitration of claims, including claim of violation of discharge injunction); *Bigelow v. Green Tree Financial Servicing Corp.*, No. CV-99-6644, 2000 WL 33596476 (E.D. Cal. Nov. 30, 2000) (holding that because plaintiff's section 524 claim was brought two years after she had received a discharge in her chapter 7 bankruptcy case, the cause of action does not address the liquidation of the estate nor the priority of the creditor's claims, the Court perceives no adverse effect on compelling arbitration).

[132] *Epic Sys. Corp.*, 138 S. Ct. at 1624 (emphasis added).

[133] *In re Mirant Corp.*, 316 B.R. 234, 241 (Bankr. S.D. Tex. 2004); *see also Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 103 (2d Cir. 2004) (finding that Congress intended for bankruptcy litigation to be centralized in a federal forum); *Publicker Indus. Inc. v. United States* (*In re Cuyahoga Equip. Corp.*), 980 F.2d 110, 117 (2d Cir. 1992) (holding that Code policy favors centralized administration of claims in bankruptcy court).

[134] *See* 28 U.S.C. §§ 1334(a)–(b) ("the district courts shall have original and exclusive jurisdiction of all cases under title 11 . . . and original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.").

[135] 28 U.S.C. § 157 (itemizing core proceedings); 11 U.S.C. §§ 301, 321–331, 361–366, 501–503, 541–551, 1101–1146.

impact the bankruptcy's purpose regarding centralization of issues.[136]   However, one claim arguably dependent on centralization of bankruptcy issues is enforcement of a discharge.[137]   The discharge injunction allows debtors a fresh start in life and a clear field for future effort unburdened by the existence of old debts.[138]   The effectiveness of a bankruptcy proceeding therefore relies on a functioning discharge, which protects debtors after the resolution of their bankruptcy proceedings and distribution of their estates.[139]   Thus where a debtor no longer requires the protection of the automatic stay to ensure her fresh start, the discharge injunction is essential in the post-bankruptcy context, and the objective is still implicated after the estate is fully administered.[140]

Two decisions from the Southern District of New York reach opposite conclusions in compelling arbitration of claimed violations of the discharge injunction under section 524.[141]   In *Belton*, the court ruled that "arbitrating [the plaintiffs'] Section 524 claims would neither necessarily nor seriously jeopardize the objectives of that section or of the Bankruptcy Code in general."[142]   Because the plaintiffs had received their discharges in their chapter 7 bankruptcy cases prior to commencing their section 524 claims, *Belton* held that such claims would not interfere with or affect the distribution of the estate, and would not affect an ongoing reorganization.[143]   In *Anderson*, the court disagreed with *Belton's* reasoning.[144]   In deciding under the first factor whether the plaintiff still required protection from the discharge, the court in

---

[136] *In re Anderson*, 553 B.R. at 230–31.
[137] *Id.* at 231.
[138] *Id.*
[139] *Id.*
[140] *Id.*
[141] *See In re Belton*, 2015 WL 6163083; *In re Anderson*, 553 B.R. 221.
[142] *In re Belton*, 2015 WL 6163083, at *6-7.
[143] *Id.*; *see also Bigelow*, 2000 WL 33596476 (holding that because plaintiff's section 524 claim was brought two years after she had received a discharge in her chapter 7 bankruptcy case, the cause of action does not address the liquidation of the estate nor the priority of the creditor's claims, the Court perceives no adverse effect on compelling arbitration).
[144] *In re Anderson*, 553 B.R. at 230-234.

*Anderson* stated that "[t]he effectiveness of a bankruptcy proceeding . . . relies exclusively on a functioning discharge.  In other words, only through enforcement of the discharge order can the discharge provided by the Bankruptcy Court provide the debtor with a 'fresh start,' a central objective to the bankruptcy laws."[145]

In the present case, this Court finds *Belton's* reasoning more persuasive.  Here, Debtors' estate has been full administered and closed for almost one year.[146]  Sending Debtors' claims to arbitration would not jeopardize the important purposes that bankruptcy serves because Debtors' bankruptcy case is already closed, and arbitration of Plaintiffs' section 524 claim will neither interfere nor affect the distribution of the estate, and will not affect an ongoing reorganization.  While other courts hold that sending a section 524 claim to arbitration arguably implicates matters central to the purposes and policies of the Bankruptcy Code,[147] in light of the facts surrounding this particular case, and the recent Supreme Court's mandate in *Epic*, this Court is not persuaded that a discharge injunction claim in the instant case should not be sent to arbitration.[148]  Rather, it is the party's heavy burden to show a clear and manifest expression of congressional intent that the Bankruptcy Code displaces the FAA.[149]  Where Plaintiffs fail to carry their heavy burden, this Court is guided by the Supreme Court's mandate to compel arbitration.[150]

The second policy reason behind not compelling arbitration within the context of bankruptcy—the need to protect creditors and reorganizing debtors from piecemeal litigation—is absent here for the same reasons set forth above.  With the main bankruptcy case being closed,

---

[145] *Id.* at 231 (footnote omitted) (citations omitted).
[146] *See* Bankr. ECF No. 183 (closing case on April 25, 2018).
[147] *In re Anderson*, 553 B.R. at 231.
[148] *Epic Sys. Corp.*, 138 S. Ct. 1612.
[149] *Epic Sys. Corp.*, 138 S. Ct. at 1624.
[150] *Id.*

the current Adversary Proceeding involves a two-party dispute.[151]  With there being no need to protect creditors or reorganizing debtors, the Order Compelling Arbitration does not conflict with the policy reasons advanced by *National Gypsum*.

Lastly, this Court must consider the undisputed power of a bankruptcy court to enforce its own orders.[152]  The Second Circuit in *Hill* relied on the fact that the bankruptcy court was not uniquely able to interpret and enforce the automatic stay provisions.[153]  *Hill* noted that "[a]rbitration is presumptively an appropriate and competent forum for federal statutory claims," and there was nothing to suggest that the bankruptcy court was more qualified than an arbitrator to adjudicate a claim alleging violations of the automatic stay.[154]  The court in *Belton* similarly ruled that a bankruptcy court is not uniquely able to interpret and enforce a discharge order because such an order is a form order that is entered in every case where a discharge is due and is not a unique order of the bankruptcy court specific to the case.[155]  However, in *Anderson*, the Second Circuit held that arbitration of a discharge injunction goes against the undisputed power of a bankruptcy court to enforce its own orders.[156]  "Though the discharge injunction itself is statutory and thus a standard part of every bankruptcy proceeding, the bankruptcy court retains a unique expertise in interpreting its own injunctions and determining when they have been violated."[157]  As such, *Anderson* held that violations of a court-ordered injunction are enforceable only by the bankruptcy court, and only through a contempt citation.[158]

This Court finds the reasoning of *Hill* and *Belton* more persuasive.  While a bankruptcy

---

[151] ECF No. 12.
[152] *In re Nat'l Gypsum Co.*, 118 F.3d at 1069.
[153] *MBNA America Bank, N.A. v. Hill*, 436 F.3d 104, 110 (2d Cir. 2006).
[154] *Id.*
[155] *In re Belton*, 2015 WL 6163083, at *8–9.
[156] *Anderson v. Credit One Bank, N.A. (In re Anderson)*, 884 F.3d 382, 390–91 (2d Cir. 2018).
[157] *Id.*
[158] *Id.* at 391.

court is experienced in dealing with and interpreting its own orders, there is no evidence in the record or in the instant case that the arbitral system would not afford Plaintiffs their rights to which they are entitled to.[159]   Indeed, other forms of complex cases have readily been sent to arbitration.  In the context of antitrust claims, the Supreme Court held that "arbitral tribunals are readily capable of handling the factual and legal complexities of antitrust claims, notwithstanding the absence of judicial instruction and supervision."[160]   Likewise, the streamlined procedures of arbitration do not entail any consequential restriction on substantive rights, and there is no reason to assume that arbitrators will not follow the Bankruptcy Code.[161]

In support of their argument that the Bankruptcy Code stands in inherent conflict with the FAA, Plaintiffs cite to *Anderson* and *Roth v. Butler Univ., et al.*[162]   In *Anderson*, the Second Circuit held that a bankruptcy court did not abuse its discretion in denying the motion to compel arbitration, which included claims alleging a violation of the discharge injunction.[163]   Concluding that arbitration of a discharge injunction would seriously jeopardize a particular core bankruptcy proceeding, the Second Circuit found that: (1) the discharge injunction was integral to the bankruptcy court's ability to provide debtors with a fresh start; (2) the debtor's claim was with respect to an ongoing bankruptcy matter that required continual court supervision; and (3) the equitable powers of the bankruptcy court to enforce its own injunctions are central to the structure of the Bankruptcy Code.[164]

In *Roth*, the court held that allowing arbitration of a § 523(a)(8) claim for hardship

---

[159] *McMahon*, 482 U.S. at 231.
[160] *Id.* at 232 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 633–34, 105 S. Ct. 3346, 3357–58 (1985)).
[161] *Id.*
[162] *In re Anderson*, 884 F.3d 382; *Roth v. Butler Univ., et al.* (*In re Roth*), No. 18-50097, 2018 WL 6039099 (Bankr. S.D. Ind. Nov. 16, 2018).
[163] *See generally In re Anderson*, 884 F.3d 382.
[164] *Id.* at 390.

discharge of student loan debt creates an inherent conflict with the Bankruptcy Code because it would remove an essential function of bankruptcy law from bankruptcy courts.[165]   Allowing arbitration of a dischargeability issue would effectively allow parties to contractually overrule the application of federal bankruptcy law, and analogized that "[b]ankruptcy without the discharge is like a car without an engine; a useful tool rendered ineffective."[166]

      While both cases discuss the *McMahon* standard and whether the FAA may be overridden by a contrary congressional command, both fall short of the *Epic* mandate that a party bears the heavy burden of showing a clearly expressed congressional intention that the Bankruptcy Code displaces the FAA.[167]   *Epic* was published after *Anderson* and was of record when Plaintiffs filed their Response to Motion to Compel, yet Plaintiffs failed to discuss *Epic's* requirement that a party must show that Congress *clearly* and *manifestly* intended for the Bankruptcy Code to override the FAA.[168]   While *Roth* discussed the *Epic* decision, the court primarily relied on the *McMahon* standard for determining whether contrary congressional command existed.[169]   *Roth* further considered policy arguments that the purpose of federal bankruptcy law was to help the honest and unfortunate debtor and to centralize disputes regarding a debtor's legal obligations for prompt and efficient resolution in bankruptcy courts.[170] *Roth* concluded that "allowing an arbitrator to determine issues of dischargeability creates an inherent conflict with the Bankruptcy Code because it would remove an essential function of bankruptcy law from bankruptcy courts."[171]   However, in light of the Supreme Court's *Epic* decision, a party must do more than simply show that referring a matter to arbitration would

---

[165] *In re Roth*, 2018 WL 6039099, at *4.
[166] *Id.*
[167] *Epic Sys. Corp.*, 138 S. Ct. at 1624.
[168] *Id.* (emphasis added).
[169] *In re Roth*, 2018 WL 6039099, at *5.
[170] *Id.* at *4.
[171] *Id.*

conflict with the purposes of the Bankruptcy Code.  Plaintiffs argue that the Bankruptcy Code displaces the FAA, yet they fail to carry their heavy burden of showing a *clear* and *manifest* expression of congressional intention that such a result should follow.[172]  As such, this Court is not persuaded that compelling arbitration in the instant case is inadequate to protect the substantive rights granted by the Bankruptcy Code.  Lastly, this Court considers whether Defendants waived their right to arbitrate in writing.

### F.  Whether Defendants Waived their Right to Arbitrate in Writing

Assuming arguendo that Plaintiffs' argument regarding waiver of arbitration is relevant, their argument still does not change this Court's conclusion.  Section 157 delegates to bankruptcy courts the statutory authority to hear and enter final judgment on specific bankruptcy-related claims, subject to appellate review by the district court.[173]  Article III of the Constitution prohibits bankruptcy courts from entering final judgments on certain of those claims.[174] Concerning non-core proceedings, bankruptcy courts may "hear and determine" such proceedings, and "enter appropriate orders and judgments," only "with the consent of all the parties to the proceeding."[175]  Without consent from all the parties, bankruptcy courts in non-core proceedings may only "submit proposed findings of fact and conclusions of law," which the district court reviews *de novo*.[176]  Under the FAA, arbitration is a matter of contract, and courts are commanded to enforce arbitration contracts according to their terms.[177]  The FAA provides that written contracts to arbitrate are valid, irrevocable, and enforceable, save upon grounds as

---

[172] *Epic Sys. Corp.*, 138 S. Ct. at 1624 (emphasis added).
[173] 28 U.S.C. § 157(b)(1).
[174] *Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 27, 134 S. Ct. 2165, 2168, 189 L. Ed. 2d 83 (2014); *see Stern*, 564 U.S. at 498 ("Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case . . . .").
[175] 28 U.S.C. § 157(c)(2).
[176] 28 U.S.C. § 157(c)(1).
[177] *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

exist at law or equity for the revocation of any contract.[178]

Here, Plaintiffs and Defendants consented to entry of final orders on all non-core matters by this Court.[179]  Plaintiffs raise the novel but flawed argument  that Defendants' consent to this Court "adjudicating, and hearing and determining the causes of actions raised by Plaintiffs" effectively invalidated Defendants' right to compel arbitration.[180]  Plaintiffs do not provide any support for this broad reaching proposition, and this Court will not fashion a waiver by implication in light of the directive by the FAA that written contracts to arbitrate "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or equity for the revocation of any contract."[181]  As such, Plaintiffs failed  to demonstrate that Defendants waived their right to arbitration by consenting to this Court's entry of final orders on non-core bankruptcy claims.

## IV.  CONCLUSION

Plaintiffs' Motion to Reconsider does not change this Court's analysis with regard to its Order Compelling Arbitration.  In the Fifth Circuit, a waiver of arbitration, while disfavored, may be found when a party substantially invokes the judicial process and causes detriment or prejudice to the other party.  Generally, a party substantially invokes the judicial process by initially pursuing litigation of claims, then reversing course and attempting to arbitrate those claims.  The party claiming waiver of arbitration bears a heavy burden, and there is a strong presumption against finding a waiver.  Any doubts must be resolved in favor of arbitration. Notwithstanding *Forby*, Plaintiffs have failed to meet their burden of showing that Defendants have substantially invoked the judicial process.  Unlike in *Forby*, where defendants were fully

---

[178] 9 U.S.C. § 2.
[179] ECF Nos. 25, 28.
[180] ECF No. 152 at 9; *see* ECF Nos. 28, 88, 90 (stating that Defendants consent to this Court entering final orders or judgment consistent with Article III of the Constitution).
[181] 9 U.S.C. § 2.

aware of their right to compel arbitration, here, the only evidence on record demonstrates that the Motion to Arbitrate was filed shortly after new counsel appeared on Defendants' behalf.  Because there was no evidence that Defendants intentionally sat on their right to compel arbitration, Defendants have not substantially invoked the judicial process.

Similarly, *Forby* does not change this Court's analysis when it comes to a finding of prejudice.  A party opposing arbitration must also demonstrate prejudice, which relates to delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.  In *Forby*, prejudice followed when a party transferred a case for the purpose of compelling arbitration, then waited 13 months before moving to compel.  The facts are distinguishable here, where the Motion to Arbitrate was filed two months after Defendants filed their original answer to the complaint, and filed shortly after engagement of new counsel for Defendants.  Such delay is minimal at best and does not change this Court's analysis.  As such, Plaintiffs have failed to demonstrate a prejudicial finding of delay.

Plaintiffs have not met their burden as to expense.  A showing of significant litigation expenses can give rise to a finding of prejudice.  Plaintiffs provide an affidavit and argue that they were required at tremendous expense to file numerous responses and replies to Defendants' briefing with respect to their motions to dismiss and other motions.  However, Plaintiffs' fail to discern whether the increase in legal expenses came from a delay in the invocation of arbitration, or from other matters usually encountered in litigation. Plaintiffs' citation to *Forby* fails to allege specifics that helps carry their heavy burden of proof.  As such, Plaintiffs have failed to demonstrate a prejudicial finding of delay.

Plaintiffs have not met their burden as to damage.  When a party will have to re-litigate in

the arbitration forum an issue that has already been decided by the district court in its favor, that party is prejudiced.  Damage may occur where parties engage in extensive pretrial activity, including full-fledged discovery, expert preparation, and trial preparation, as it gives the other side perspective on that party's strategy.  Plaintiffs utilize *Forby* to argue that their legal position has been damaged as a result of Defendants' filing their Motion to Dismiss, yet the damage here is not like *Forby*.  Here, no counterclaims have been asserted, Defendants have not taken discovery, there has been no expert or trial preparation, no affirmative defenses have been pled, and no motion for summary judgment has been filed.  Plaintiffs have been unable to meet their heavy burden in showing prejudice sufficient to constitute a waiver of arbitration.

Plaintiffs argument regarding sending core bankruptcy claims to arbitration still does not change this Court's conclusion.  The FAA directs courts to respect and enforce the parties' chosen arbitration procedures.  This mandate may be overridden by a contrary congressional command, which can be shown by the Fifth Circuit test in *National Gypsum*.  However, the party bears a heavy burden of showing a clearly expressed congressional intention that referring a matter to arbitration would conflict with the purposes of the Bankruptcy Code, and that such an intent clearly and manifestly follows.  Plaintiffs have failed to meet their heavy burden here, and fail to show that referring their core matters to arbitration inherently conflicts with the purposes of the Bankruptcy Code.

Lastly, Plaintiffs' novel but flawed argument that Defendants' waived their right to arbitrate in writing does not change this Court's conclusion.  Article III of the Constitution prohibits bankruptcy courts from entering final judgments on certain claims.  As a result, parties may consent to a bankruptcy court's authority to hear and determine such proceedings and enter appropriate orders and judgments.  Here, Plaintiffs and Defendants consented to this Court

hearing and determining such proceedings and entering appropriate orders and judgments. While Plaintiffs' argue that Defendants' consent to this Court's authority to hear and determine proceedings and enter judgments invalidated their right to compel arbitration, Plaintiffs neither provide support for their proposition, nor do they square that proposition up against the FAA's directive that written contracts to arbitrate are valid save upon such grounds as exist at law or equity for the revocation of any contract.   As such, Plaintiffs failed to show that Defendants waived their right to arbitration in writing.

Pending before the Court is Plaintiffs' Motion to Reconsider.   ECF No. 152. Accordingly, it is therefore

**ORDERED** that:

1.  Plaintiffs' Motion to Reconsider, ECF No. 152, is DENIED.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 03/07/2019.

Eduardo V. Rodriguez
United States Bankruptcy Judge